# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

---------------------------------------------------------------

MANSUR MAQSUDI, FARID      :
MAQSUDI, and ABDUL RAUF    :
MAQSUDI,                   :
                              :
                **Plaintiffs,**   :
                              :
                              :
         **v.**                 :
                              :
**GLOBALOPTIONS, INC. and**    :
**ZEROMAX GMBH,**          :   **Case No. 1:07CV01252 (RJL)**
                              :
           **Defendants.**  :

---------------------------------------------------------------

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT GLOBALOPTIONS, INC. MOTION TO DISMISS THE COMPLAINT

/s/ Morton S. Taubman_____
Morton S. Taubman, Esq.
DC Bar No. 316604
Leser Hunter Taubman & Taubman, PLLC
1201 15th Street, N.W.
Second Floor
Washington, DC 20005
(202) 347-9090 (Telephone)
(202) 659-2679 (Facsimile)
E-Mail: mtaubman@isiwdc.com

/s/ Mark David Hunter_____
Mark David Hunter, Esq.
DC Bar No. 974569
Leser Hunter Taubman & Taubman, PLLC
407 Lincoln Road
Suite 500
Miami Beach, Florida 33139
305-604-5547 (Telephone)
305-604-5548 (Facsimile)
E-Mail: mdhunter@lhttlaw.com

Attorneys for Defendant GlobalOptions, Inc

**TABLE OF CONTENTS**

INTRODUCTION ……………………………………………………...……………1

ARGUMENT ……………………………………………………..…………….....1

    I.       PLAINTIFFS COMPLAINT WAS NOT FILED WITHIN THE STATUTE
           OF LIMITATIONS ………………………………………….…………….…2

    II.     PLAINTIFFS HAVE FAILED TO STATE VIABLE CLAIMS FOR
           DEFAMATION AND FALSE LIGHT INVASION OF PRIVACY …………….4

         A.      Plaintiffs' Claims Are Barred By The First Amendment..………………4

         B.      Plaintiffs' Claims Are Barred By The Fair Reporting Privilege ………….8

    III.    THE ACT OF STATE DOCTRINE DOES BAR THIS CASE …………………..11

CONCLUSION …………………………………………………………………...21

**TABLE OF AUTHORITIES**

FEDERAL CASES                                                                    Page(s)

*Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28 (D.D.C, 2004) ……………….…..……………………...17

*\*Arbitraje Casade Cambio, S.A. de C.V.* v. *U.S. Postal Serv.,*

    297 F. Supp. 2d 165 (D.D.C. 2003)…………………………………….…..……………………...…....3

*Banco National de Cuba v. Sabbatino*, 376 U.S. 398 (1964) …………………………………11,12,16

*Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875 (1981)…………………....12

*Bell v. Domino's Pizza Inc.*, No. Civ. A. 99-2376 (PLF/JMF),

    2000 WL 1780266 (D.D.C. Nov. 21, 2000) …………………………………………………18

*Cox Broadcasting Co., v. Cohn*, 420 U.S. 469 (1975) ……...……………………………………6,13

*Curtis Publishing Co. v. Butts, 388* U.S. 130 (1967) …………………………………………….7

*Dameron* v. *Washington Magazine, Inc*,. 779 F.2d 736 (D.C. Cir. 1985) …...........................…....8,10

*El-Fadl v. Cent. Bank of Jordan, 75* F.3d 668 (D.C. Cir. 1996)…...................................................19

*\*Galu v. Swissair*, No. 86 Civ. 5551 (CSH),

    1987 Wl.. 15580 (S.D.N.Y. Aug. 3. 1987)    ……………………………………..……………19,20

*Garrison v. Louisiana*, 379 U.S. 64 (1964) ……………………………………………….…..5,7

*\*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) …..................................................................4,5

*Guccione v. Flynt*, 617 F. Supp. 917 (S.D.N.Y. 1985)…………………………………………….2

*Indus. Inv. Dev. Corp. v. Mitsi & Co.*, 594 F.2d 48 (5th Cir. 1979) ………...............................…15,16

*\*Letelier v. Republic of Chile*, 488 F.Supp.665 (D.D.C. 1980)…………………………………14

*\*Lee v. Dong-A llbo*, 849 F.2d 876 (4th Cir. 1988)…………………………...…………..………8,9

*Loraine Jounal Co. v. Milkavich*, 474 U.S. 953 (1985) ………………………..……………….5

*MacNeil v. Whittemore*, 254 F.2d 820 (2d Cir. 1958) ……………………...……..……………….2

*Monegasque de Reassurances S.A.M. v. NAKNaflogaz of Ukraine,*

    311 F.3d 488 (2d Cir. 2002)………………………………………………………………………19

*Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir. 1989) .......................................3

*\*OAO Alfa Bank v. Cir. for Pub. Integrity,* 387 F. Supp. 2d 20 (D.D.C. 2005)........................4,7,8

*Oceanic Exploration Co. v. Conoco Phillips, Inc.,*
    Civ. A. No. 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006)....... ...............................15,16

*Phoenix Enter, LLC v. Shirley Highway Distrib. Ctr., LLC*, No. 07-1011-SMT, 2007
    WL 2601014, (Bankr. D.D.C. Sept. 10, 2007)…………………….……………………18

*Republic of the Philippines v. Westinghouse Elec. Corp.,*774 F. Supp. 1466 (D.N.J. 1991)...…….16

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) …………………………………………………....…..4

*ROZ Trading Ltd. v. Zeromax Group, Inc.,* Civ. No. 06-01040 (CKK),

    2007 WL 2812760 (D.D.C. Sept. 28, 2007)................................... ...........................6,13

*St.Amant v. Thompson,* 390 U.S.727 (1968). ..........................................................................6,7

*Tavoulareas v. Piro*, 763 F.2d 1472 *(D.C.*Cir.1985)........................................................6

*Timberiane Lumber Co. v. Bank of Am., N.T. & S.A.,* 549 F.2d 597 (9th Cir. 1977)…...15,16,19

*Underhill v. Hernandez,* 376 U.S. 398, 419 (1964)………………………………...…..…..11

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990} .....................…....…..…..9

*W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Ira'l,* 493 U.S. 400 (1990) ….................15

## STATE CASES

*Hunt v. Coastal States Gas Producing Co.* 583 S.W. 2d 322 (Tex. 1979)………...…………………12

*Phillips v. Evening Star Newspaper Co.,* 424 A.2d 78 (D.C. 1980)………………………10

FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(6) …………………………………………………..……2,8

Fed. R. Civ. 12(h) ……………………………………………………………2

28 U.S.C. § 1608(a)(4) .………………………………………………………14

STATE STATUTES

D.C. Code § 12-301(4)(2001) ………………………………………………….2

OTHER AUTHORITIES

Restatement (Second) of Torts §611 (1977)...................................................10

Restatement (Third) of Foreign Relations Law § 443 ………………………………18

Conflicts of Laws……………………………………………………………...12

## INTRODUCTION

Defendant GlobalOptions, Inc. ("Global") respectfully submits this Reply Memorandum of Points and Authorities, in response to Plaintiffs' Opposition to GlobalOptions' Motion to Dismiss the Complaint ("Plaintiffs' Opposition"), and in Support of its Motion to Dismiss the Complaint. In Plaintiffs' Opposition, Plaintiffs contend that their Complaint: (1) was filed within the applicable Statute of Limitations; (2) has stated viable claims for Defamation and False Light Invasion of Privacy (in that both claims are not barred by either the First Amendment or the Fair Reporting Privilege); and (3) that this matter is not barred by the Act of State Doctrine. For the reasons articulated in both Global's Motion to Dismiss the Complaint, as well as herein, Plaintiffs' arguments are baseless, and their Complaint should be dismissed in its entirety.

## ARGUMENT

Plaintiffs' Opposition initially stated that: (i) Global submitted documents that were beyond the Complaint; and (ii) Global failed to raise a personal jurisdictional argument and therefore concedes such personal jurisdiction. *See Plaintiffs' Opposition* at 4. Each of these allegations is, however, without substance. First, while the Plaintiffs allege in its Opposition that Global submitted documents that are beyond the Complaint, they fail to identify such documents. Second, Plaintiffs draw a false conclusion as to the jurisdictional issue since the Court has the discretion to permit Global to raise jurisdiction at any time prior to further pleadings in this

1

Case.[1] Plaintiffs' complaints are clearly nothing more than attempts to detract attention away from their lack of legal basis to avoid dismissal of their deficient Complaint.

## I.     PLAINTIFFS' COMPLAINT WAS NOT FILED WITHIN THE STATUTE OF LIMITATIONS

Plaintiffs' allege that Global has raised a "patently frivolous statute of limitations argument." *See Plaintiffs' Opposition* at 5. Unfortunately for Plaintiffs, however, Global's Motion to Dismiss this action for failure to file the Complaint within the one year statute of limitations, as provided under D.C. Code § 12-301(4) (2001), was based upon the allegations set forth in the Complaint, wherein the Plaintiffs alleged that the registration dates of the websites in question were June 9, 2006 and July 6, 2006. See *Compl.* ¶¶ 14 and 16. Second, Plaintiffs' Opposition admitted certain errors with respect to the registration dates as set forth in the Complaint. Plaintiffs have attempted to amend their Complaint by merely stating the alleged proper dates in the Opposition, and apparently claim that doing so brings this action within the one year statute of limitations. Like Plaintiffs' Complaint, however, Plaintiffs' argument with regards to Global's requested dismissal on Statute of Limitation grounds is baseless.

First, a Rule 12(b)(6) motion "tests the legal sufficiency of the Complaint," such that "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to

---

[1] *See, e.g., Bechtel*, 534 F.2d at 1341 n.8 (holding Rule 12(h) "does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of motion well in advance of a hearing") (quoting *MacNeil v. Whittemore*, 254 F.2d 820, 821 (2d Cir. 1958)); *see also Guccione v. Flynt*, 617 F. Supp. 917 (S.D.N.Y. 1985) (granting subsequent motion to dismiss for lack of personal jurisdiction where defendant had not raised the defense in first motion); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1194 (2d ed. 1990) ("The use of judicial discretion [to permit amendment of motions] seems especially appropriate . . . if it will help resolve the litigation at an early date.").

dismiss." See *Arbitraje Casa de Cambio S.A. de C.V. v. U.S. Postal Serv.,* 297 F. Supp. 2d 165, 168, 170 (D.D.C. 2003) (dismissing plaintiff's complaint where it stated claims for expired torts, holding that it could not be supplemented by opposition brief's new allegations for viable contract claims); *Morgan Distrib. Co. v. Unidynamic Corp.,* 868 F. 2d 992, 995 (8th Cir. 1989) ("To hold otherwise would mean that a party could unilaterally amend a complaint at will…even without filing an amendment, and simply by raising a point in a brief.")

Second, Plaintiffs supplied Exhibit G with Plaintiffs' Opposition, and stated in Plaintiffs' Opposition that such Exhibit represents the Domain name of "Mansurmaqsudi.com," owned by Global. However, Plaintiff misrepresented in their Opposition to the Defendant Zeromax' Motion for Dismissal that the registration was some date after July 11, 2006. However, the date of registration as reflected on Plaintiffs' Opposition, Exhibit G is in fact July 11, 2006. As such, the Complaint was in fact filed on July 11, 2007, more than one year from such registration date. Accordingly, even Plaintiffs' self-serving changing of the registration dates of the websites in question cannot save Plaintiffs' Complaint from dismissal. Plaintiffs' Complaint has failed for two reasons: (i) Plaintiffs have failed to cure the Complaint's statute of limitation deficiencies with Plaintiffs' Opposition; and (ii) the Complaint was untimely filed, notwithstanding Plaintiffs' Opposition. As such, Plaintiffs' Complaint should be dismissed in its entirety.

## II.    PLAINTIFFS HAVE FAILED TO STATE VIABLE CLAIMS FOR DEFAMATION AND FALSE LIGHT INVASION OF PRIVACY

### A.    Plaintiffs Claims Are Barred By The First Amendment

In Plaintiffs' Opposition, Plaintiffs first attempt to ignore the fact that Plaintiffs are in fact, public figures, or at least limited public figure as defined in *OAO Alfa Bank v. Center for Public Integrity,* 387 F. Supp. 2d 20 (D.D.C. 2005).  Plaintiffs cite both *Rosenblatt v. Baer,* 383 U.S. 75, 92 (1966) and *Getz v. Welch*, 418 U.S. 323, 341 (1974) in Plaintiffs' Opposition to support their limited definition of a public figure.  There is little doubt that Plaintiffs are at least limited purpose public figures and judicial notice would certainly hold such, since all of the publicity surrounding the public controversy over their alleged violations of Uzbek law and the government-ordered forfeiture of their interest in the Coca-Cola bottling business in Uzbekistan — a controversy that was reported in this country (and around the world) well before the publications that are the subject of this suit.  The *Rosenblatt* case surrounded a lower court's decision that found for a public figure by awarding damages for a newspaper article written about him that included negligent misstatement of facts.  However, the Supreme Court had no difficulty reversing and remanding the case where it was held the "protection which the law of defamation affords must be limited by the constitutional protections for public discussions for a public figure. *See Rosenblatt*, 383 U.S. 75, 86.  In *Gertz,* the Supreme Court concluded that unlike a private individual, public figures "voluntarily expose themselves to increased risk of injury from a defamatory falsehood concerning them."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

Plaintiffs' Opposition continues by citing further cases to support their erroneous argument that they are not public figures or subject to public debate. However, after the *Gertz* decision, the Supreme Court re-examined the definition of "public figure." In doing so, the Court held that even a high school wrestling coach was a public figure and, accordingly, the publisher of an article that included gross misstatements about such high school wrestling coach was not liable for damages. *See Loraine Journal Co. v. Milkavich,* 474 U.S. 953 (1985).

In Plaintiffs' Opposition, Plaintiffs state that, assuming Plaintiffs <u>are</u> public figures, "Plaintiffs need not allege that Global itself fabricated information on the websites, as Global incorrectly argues. Plaintiffs must allege only that Global, in publishing the false and defamatory statements, acted "with reckless disregard for the truth."" *Plaintiffs' Opposition* at 10 (internal citation omitted). However, in *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964), the Supreme Court held that, in order to demonstrate "actual malice," a plaintiff must show that statements were "made with a high degree of awareness of their probable falsity." Plaintiffs' Complaint does not allege Global had any relationship with Karimova and merely alleges Global "failed to act with ordinary care with respect to whether these statements were false." *Comp'l.* ¶ 40. Even assuming the truth of Plaintiffs' allegation, it is clear that common law malice as alleged in Plaintiffs' Complaint falls short of the "actual malice" required under the facts alleged by the Plaintiffs in their Complaint.

Plaintiffs have created a public record of the alleged wrong doing of Uzbekistan, prior to the date of any publishing on the websites in question.[2] Accordingly, and as decided in *Cox Broadcasting Co. v. Cohn*, 420 U.S. 469 (1975), the First Amendment precludes anyone from recovery of damages from one who publishes any articles reflecting the public record. It is clear that a public record in the United States was created by the Plaintiffs' own action, and the websites in question are merely reporting on the actions of the Uzbekistan government which is subject to the case filed in this Court prior to the date of the publications of the website.

Plaintiffs' Opposition also states that Global had "abundant reasons to question the truth of the information provided to them for publication on the website" as a result of some alleged conversations by and between Livingstone and Gerson (co-counsel for Plaintiffs in this Case). *See Plaintiff's Opposition* at 10. As Plaintiffs' alleged in their Complaint, the website in question only cited official government documents and how would one draw a conclusion that such official government documents would be untruthful. *Compl.* ¶ 35. Further, nowhere in their Complaint do Plaintiffs contend that the Uzbekistan government did not, in fact, allege the wrongdoing of the Plaintiffs and their related companies as reported in the websites in question.

Plaintiffs cite *Tavoulares v. Piro*, 763 F.2d 1472, 1474 (D.C. Cir. 1985) and *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) to develop their ill conceived theory that Global acted "with reckless disregard for the truth." *Plaintiffs' Opposition* at 10. However, in *St. Amant*, the

---

[2] Plaintiffs have filed at least two other lawsuits and in each of these actions the Plaintiffs have described the alleged wrong doing of Uzbekistan which is at the heart of this case. *Roz Trading Ltd., et al. v. Zeromax Group, Inc., et al.*, Case Number 1:06-cv-01040-CKK (Comp'l. ¶ 4) and the New Jersey divorce case of Plaintiff Mansur Maqsudi and Karimova (Comp'l. ¶ 12 d.

Supreme Court went to great pains to develop what it thought the definition of "actual malice" should be as a result of the *New York Times* case, and stated as follows:

> In *Garrison v. Louisiana*, 379 U.S. 64 (1964), also decided before the decision of the Louisiana Supreme Court in this case, the opinion emphasized the necessity for a showing that a false publication was made with a "high degree of awareness of . . . probable falsity." [internal citation omitted] MR. JUSTICE HARLAN'S opinion in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153 (1967), stated that evidence of either deliberate falsification or reckless publication "despite the publisher's awareness of probable falsity" was essential to recovery by public officials in defamation actions. These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

390 U.S. 727 at 732. Again, Plaintiffs must prove that (i) the official government documents were false and (ii) Global had knowledge of such falsity, and (iii) that its knowledge amounted to a reckless disregard for the truth. Plaintiffs would have to pierce the Uzbekistan government to determine if the foreign government acted under some sham to develop all of the charges and claims that were reported in the websites in question, and this Court would then have to ignore the Act of State Doctrine (discussed below). Assuming Plaintiffs could accomplish all of this, Plaintiffs would then face the burden of then proving that Global was reckless in reporting such. Thus, for actual malice to be present, Plaintiffs must convince this court to ignore the Act of the State Doctrine, or Plaintiffs will be unable to prove defamation or False Light Invasion of Privacy.

In summary, this case is akin to *OAO Alfa Bank*, wherein Judge Bates held that: "[T]o insure the ascertainment and publication of the truth about public affairs, it is essential that the

First Amendment protect some erroneous publications as well as true ones. . . Plaintiffs no doubt have the wherewithal to respond to erroneous publications through persuasion rather than litigation. The First Amendment demands that they pursue such path." *OAO Alfa Bank*, 387 F. Supp. 2d at 57. Since nowhere in Plaintiffs' Complaint do Plaintiffs allege that Global had actual malice, Plaintiffs' Complaint fails to state a claim upon which relief may be granted, and should be dismissed under Rule 12(b)(6).

**B.    Plaintiffs' Claims Are Barred By The Fair Reporting Privilege**

Plaintiffs contend that the Fair Reporting Privilege does not extend to official reports of foreign governments under D.C. law. *Plaintiffs' Opposition* at 11. However, Plaintiffs ignore the strong policy underlying the privilege wherein the "basis of the privilege is the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings." *See Dameron v. Washington Magazine, Inc.,* 779 F. 2d 736, 739 (D.C. Cir. 1985). Plaintiffs cite *Lee v. Dong-A Iibo,* 849 F. 2d 876 (4th Cir. 1988) and *OAO Alfa Bank* (discussed above), to support their arguments. However, in each of these cases, the reviewing court did not address official reports of foreign government, but addressed either foreign press releases or a questionable internal investigation report of a Russian ex-KGB agent.

Plaintiffs – due to their own actions as well as the press articles regarding Plaintiffs in the Coca Cola matter and the Plaintiff's divorce from the daughter of the President of Uzbekistan – are public figures, and the Uzbekistan actions, whatever they may be, are subject to public interest and debate. Accordingly, "the public has both the right and the need to know what is being done and said in government-even if some of that is defamatory." *Dameron* 779 F.2d at

739. Further, as noted in *Lee,* the Plaintiffs are unlikely to suffer any real injury from publications of accounts of official government documents if such documents are from a country that is corrupt since "many American readers will often tend to discredit whatever a foreign government has to say when that government source is perceived in this country as not treating its citizens fairly by American standards." *Lee*, 849 F.2d at 882.

The underlying thrust of the Fair Reporting Privilege is based upon fair and accurate reporting of an official act and proceedings. The websites in question, as admitted by Plaintiffs, are merely the fair and accurate reporting of the official acts of the Uzbekistan government. *Compl.* ¶¶ 35 and 36. However, in Plaintiffs' Opposition, Plaintiffs state the websites are not privileged because the statements in the websites are not fair and accurate as required under the privilege. *Plaintiffs' Opposition* at 12. Further, Plaintiffs refer to Plaintiffs' Opposition, Exhibit L, which alleges misstatements. Plaintiffs' reference to minor erroneous source references, however, cannot refute the substance of each cite or accuracy of the underlying charge or statement. The websites accurately set forth the allegations and charges of the Uzbekistan government as reflected in the official documents that were included as part of the actual websites. *See e.g. White v. Fraternal Order of Police,* 285 U.S. App. D.C. 273, 909 F.2d 512, 525 (1990) (finding that alleged omissions "were immaterial because the same impressions would have been created if the omitted material had been included").

To defeat the privilege, one must show that the websites were presented as a "matter of historical fact without any indication that the statements were intended as a summary of an official document." *See White*, 909 F.2d at 528 (internal citation omitted). Plaintiffs Complaint

simply does present allegations sufficient to meet this standard. Since nothing in Plaintiffs'
Complaint indicates that the websites did not fairly and accurately report the content of public
documents and official statements, the Fair Report Privilege bars Plaintiffs' claim. See *Dameron*,
779 F.2d at 740.

Plaintiffs contend that the Privilege is inapplicable in this matter because the websites in
question were not published for the purpose of informing the public concern, as required under
the Privilege. Once again, however, Plaintiffs have conveniently ignored their own actions of
filing divorce proceeding in the State of New Jersey five years before the websites were posted.
Further, Plaintiffs, as stated above and as stated in their Complaint, created a public record by
filing actions in the State of New Jersey, Austria, and in the District of Columbia, prior to this
Case. *Comp'l.* ¶¶¶ 4, 6 and 12. While Plaintiffs may believe there may have been some other
purpose for such publication, such concern is irrelevant.

Further, Plaintiffs cite *Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78, 88 (D.C.
Cir. 1980), and attempt to use the language contained in the Tentative Draft, Restatement
(Second) of Torts ¶ 611, to strengthen there argument that the website did not report upon a
matter of public concern. However, the quoted tentative language used by Plaintiffs was never
included in the final version, and has not been the basis for any decision in this jurisdiction.
Notwithstanding, the website clearly reported upon a public event as well as on a public record.

### III.     THE ACT OF STATE DOCTRINE DOES BAR THIS CASE

Plaintiffs continue to ignore the fundamental law surrounding their alleged Defamation and False Light Invasion of Privacy claims by admitting in the Complaint that the statements in question by Global are in fact accurate sites from official documents of a foreign government. *Compl.* ¶ 35. With the Complaint clearly admitting the statements in question are from official documents of a foreign government (Uzbekistan), Global respectfully questions how the court can ignore the Act of State Doctrine to determine whether the underlying statements are based upon false proceedings of a foreign government. Since Plaintiffs' Complaint admits that the statements in question are accurate with respect to the proceedings of the foreign government, they must convince this court to ignore the Act of State Doctrine to determine whether the government of Uzbekistan acted in accordance within its legal boundaries. Stated differently, Plaintiffs' allegations in this matter will require the court to determine the validity of the official acts of Uzbekistan.

The Act of State Doctrine, a rule of law so old its roots may be traced back to the 17th Century, entered into American jurisprudence in the classic case *Underhill v. Hernandez,* 168 U.S. 250 (1897). *See also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 416 (1964). The *Underhill* Court reasoned that: "[e]very sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." 168 U.S. at 252. In later decisions, the courts expounded on the principals and policies underlying the Act of State Doctrine. For example, in *Sabbatino*, 376 U.S. 398, the Supreme Court stated that, although the Doctrine is not

implicit in the Constitution, it does have constitutional underpinnings. *Id.* at 423. The court acknowledged an implied separation of powers in Act of State questions, reasoning that sensitive areas of foreign policy were better left to the Executive Branch. *Id.* at 427-28.

After *Sabbatino*, Congress moved swiftly to curtail the Act of State Doctrine, but the judiciary has undermined the effort by narrowly interpreting the amendment and continuing to apply the Doctrine wherever it does not conflict with a constrained reading of the Hickenlooper Amendment.[3] For instance, the Second Circuit held that the Amendment only applied if the property involved in the foreign act was inside the United States. *See Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 882 n.10 (2d Cir. 1981) (deciding the case on Act of State Doctrine analysis, the court reasoned: [o]n appeal, we thoroughly reviewed the history of the Amendment, and concluded that the Amendment was intended to afford American firms a "day in court" if some entity attempted to market their expropriated . . . property in the United States, and was not intended to permit a setoff in all cases.") More importantly, in *Hunt v. Coastal States Gas Producing Co.*, 583 S.W.2d 322 (Tex. 1979), the court found the Hickenlooper Amendment merely extended to property only, and dismissed, on Act of State Doctrine grounds, the plaintiff's claim that the Libyan government had nationalized his oil fields and then contracted to sell the resource to a different oil distributor. In light of *Hunt*, it appears courts are extremely reticent to disavow the Act of State Doctrine.

Plaintiffs, by their own actions and as admitted in the Complaint, have made the actions of Uzbekistan the center of this case. Further, Plaintiffs' actions, as admitted in the Complaint,

---

[3] *See* DAVID P. CURRIE, HERMA HILL KAY, & LARRY KRAMER, CONFLICT OF LAWS 811 (2001).

have created a public record in the United States, prior to the date of the websites in question

being posted, by filing various complaints in the federal and state courts (such as the *Roz*

*Trading, LTD* complaint filed in this Court, and the divorce case for one of the Plaintiffs in the

state court for New Jersey alleging sham actions of the Uzbekistan government.) *Compl.* ¶ 12.

In *Cox Broadcasting Co. v. Cohn*, 420 U.S. 469 (1975), the Supreme Court held that no civil

recovery can be sought for disclosure of facts that are public record.[4]  In this matter, Plaintiffs

allege that the Uzbekistan actions were a sham, but cannot deny that such actions, whether

proper or improper, are now part of the public record in the United States.  The *Cox* Court

deemed official court documents to be "public records," and held that publishing the contents of

such public records to not be actionable conduct.[5]

Plaintiffs appear to be ignoring their own admissions in their Complaint.  The Complaint

states that the "…websites statements cite to highly unreliable documents issued by the Uzbek

government…" *Compl.* ¶35.  The Complaint further states and quotes the statements in question

that are direct quotes from official Uzbekistan government documents. *Compl.* ¶ 36  However,

the allegations of falsity are critical to Plaintiffs case to prove defamation and false light invasion

of privacy.  Thus, the Act of State Doctrine confronts the issue whether the Plaintiffs can prove

---

[4] The interests of privacy fade when the information involved already appears on public record, especially when viewed in terms of the First and Fourteenth Amendments and in light of the public interest in a vigorous press. *Id.* at 493-495.

[5] "A trial is a public event. What transpires in the courtroom is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. And we can see no difference though the conduct of the attorneys, of the jury, or even of the judge himself, may have reflected on the court. Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *Id.* at 492-493 (internal citation omitted).

the Uzbekistan government proceedings were a sham that resulted in invalid results, as well as

whether Global had knowledge of such sham proceedings and invalid results at the time of

reporting such.

In Plaintiffs' Opposition, Plaintiffs contend that Global's actions are at issue, rather than

the actions of the government of Uzbekistan, and site *Letelier v. Republic of Chile,* 488 F. Supp.

665, 674 (D.D.C. 1980) as its authority to side track the Act of State Doctrine. *Plaintiffs'*

*Opposition* at 14. First, this case clearly is distinguishable from the facts of our case, wherein the

plaintiffs in the *Letelier* case were seeking recovery from the Republic of Chile under the

wrongful death act in connection with the deaths of both former Chilean ambassador and foreign

minister in the District of Columbia on September 21, 1976, when Letelier's car, in which they

were riding to work with Michael Moffitt, was destroyed by an explosive device. The *Latelier*

Court could clearly dismiss the defendant Chile's argument for protection under the Act of State

Doctrine since the acts took place in the District of Columbia and clearly were not within the

sovereign border of Chile and would then come under the federal statute of Foreign Sovereign

Immunities Act of 1976, 28 U.S.C. § 1608(a)(4). Thus, to state that since the assassination took

place in the District of Columbia and the plaintiffs were claiming damages against Chile would

be similar to the case before this Court is ludicrous.

To prove defamation, a plaintiff must prove false statements. In this case, again, the

court would be placed in the unenviable position to examine the proceedings of the Uzbekistan

government. Plaintiffs continue to site cases that are clearly distinguishable from the facts in this

matter by arguing that this court can decide this matter without adjudicating the acts of

Uzbekistan.  In Plaintiffs' Opposition, Plaintiff states that the claims against Global are based

upon a leap of faith that Global "knew [publications] were false and defamatory and caused

injury to Plaintiffs.  *Plaintiffs' Opposition* at 15.  In order to prove such, Plaintiffs must first

prove the official documents of Uzbekistan are "false," since the acts of Global, while done in

the United States, were merely reporting and publishing the accurate sites of official government

documents of Uzbekistan for claims of wrong doing within the borders of Uzbekistan.  Thus, the

Plaintiffs efforts to state that the Act of State Doctrine does not apply since the acts of publishing

such alleged defamatory statements were not done by the government of Uzbekistan but done by

Global fails to meet the standard of the law.  In pursuing its theory, the Plaintiffs site *W.S.*

*Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp. Int'l,* 493 U.S. 400 (1990), *Industrial*

*Investment Development Corp. v. Mitsi & Co.,* 594 F.2d 48 (5th Cir. 1979), *Oceanic Exploration*

*Co. v. ConocoPhillips, Inc.,* No. 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006), and

*Timberlane Lumber Co. v. bank of America, N.T. & S.A.,* 549 F. 2d 597, 606 (9th Cir. 1976).  In

each of these cases the facts are clearly distinguishable and inapplicable since, in each of these

cases, the defendants' alleged wrongful conduct were carried out prior to the sovereign act in

question and clearly severable from the acts under the Act of State Doctrine.  The defendants in

each case either bribed foreign officials or conspired with foreign officials to seek foreign

government contracts.[6]

---

[6] *See W.S. Kirkpatrick,* 493 U.S. at 406 ("[N]either the claim nor any asserted defense require[d] a determination
that Nigeria's [act] . . . was, or was not, effective."); *Oceanic Exploration Co.,* 2007 WL 2711527, at *15 (holding
that the "legality or the illegality" of the government's act was "not a question to be determined," as "[t]he plaintiff
was not trying to undo a foreign government's sovereign act"); *Industrial Investment Development Corp.,* 594 F.2d
at 54 ("[N]either the validity of those [Indonesian] regulations nor the legality of the behavior of the Indonesian

In this matter, Plaintiffs have not alleged that Global bribed or otherwise conspired with foreign officials to publish the accurate sites of official Uzbekistan documents. Plaintiffs have alleged, however, that Global knew that the proceedings in Uzbekistan were a sham. *See Plaintiffs' Opposition* at 15. To prove Global had knowledge of such sham proceedings, this Court would first be required to determine whether the Uzbekistan proceedings were in fact a sham and – if so – that Global had knowledge of such at the time of creating the websites (discussion of knowledge and the requirements thereto are discussed above). In order to prove such, the Court would again be required to ignore the Act of State Doctrine to allow Plaintiffs to prove such.

In Plaintiffs' Opposition, Plaintiffs attempt to support the theory that the Act of State Doctrine is a "flexible doctrine" and the courts "apply it where the policies underlying the act of state doctrine may not justify its application." *See Plaintiffs' Opposition* at 16. Plaintiffs further cite *Republic of the Philippines v. Westinghouse Elec. Corp.,* 774 F. Supp. 1438, 1466 (D.N.J. 1991) as the basis for such argument. As stated above, the *Sabbatino* Court held that although the Act of State Doctrine is not implicit in the Constitution, it does have constitutional underpinnings. *See* 376 U.S. 398 at 423. Plaintiffs' attempt to rely on irrelevant case law is transparent. In *Republic of the Philippines,* the Republic of Philippines filed an action in the United States courts, and the case centered on alleged bribery of government officials by Westinghouse. In that matter, the United States court was not in any way required to address the

---

government is in question here."); *Timberlane Lumber*, 549 F.2d at 608 (holding that the act of state doctrine was not implicated where "allegedly 'sovereign' acts were judicial proceedings initiated by . . . a private party . . . , *not by the Honduran government itself*") (emphasis added).

issue of the Act of State Doctrine. Thus, the court could address the underlying creditability of the actions within the Republic of the Philippines without addressing the Act of State Doctrine.

Plaintiffs' Opposition has alleged that, due to some alleged orchestrated conspiracy by Defendant Zeromax, the sovereign acts by Uzbekistan are at issue in this matter. Plaintiffs site a number of cases in which Plaintiffs erroneously contend that the underlying courts in those cases ignored the Act of State Doctrine due to some conspiracy of the foreign government in question. *See Plaintiffs' Opposition* at 17. The cases Plaintiffs site do not state, in any manner, that the respective courts ignored the Act of State Doctrine, but in each case the respective courts held that a foreign sovereignty was not involved. Thus, those courts were not required to address the Act of State Doctrine.[7]

In its Opposition, the Plaintiffs make allegations of some conspiracy by Defendant Zeromax and Gulnora Karimova by masterminding the Uzbekistan "proceedings" against the Plaintiffs. *See Plaintiffs' Opposition* at 17. Further, while Plaintiffs have alleged that Global is an agent of Zeromax to create a website that published the Uzbek statements, Plaintiffs have not alleged that Global participated in the same alleged conspiracy with either Defendant Zeromax or Ms. Karimova. *Plaintiffs' Opposition* at 18. Accordingly, as a matter of law, Global could not be included with Defendant Zeromax because agency law operates to attribute an agent's conduct to its principal, and not the other way around. *See, e.g., Bell v. Domino's Pizza Inc.*, No.

---

[7]For example in *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28 (D.D.C. 2004) the Court explained that the "act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." In this case the court was satisfied it was not dealing with a foreign sovereignty (Saudi Arabia). . See P. 53.

Civ. A. 99-2376 (PLF/JMF), 2000 WL 1780266, at *1 (D.D.C. Nov. 21, 2000). Besides agency law, Plaintiffs would be barred from using the alleged conspiracy theory against Global since Plaintiffs introduced this conspiracy or orchestration theory for the first time in the Opposition and the Complaint is void of such allegations. To support their conspiracy theory, Plaintiffs have introduced (again for the first time, in the Opposition) a declaration.[8]

Further, regarding the entire conspiracy or "orchestration" theory, Plaintiffs present the position that such a theory would undermine the Act of State Doctrine, and further suggest this would permit this Court to invalidate the acts of state at issue. However, none of Plaintiffs' sited cases support the existence of such an exception because none of Plaintiffs' cases required invalidation of acts of state (so the Act of State Doctrine was not even implicated.) [9]

---

[8] In support of these statements, Plaintiffs (Opp'n at P. 18) cite to the Declaration of Farhod Tnogambaev (Ex. B) who claims to have been formerly employed by Gulnora Karimova. The Court may not properly consider this declaration on a Rule 12(b)(6) motion to dismiss. *See In re Phoenix Enter, LLC v. Shirley Highway Distrib. Ctr., LLC,* No. 07-10011-SMT, 2007 WL 2601014, at *3 n.7 (Bankr. D.D.C. Sept. 10, 2007) (noting that on a motion to dismiss "the court must limit its inquiry to the four corners of the [c]omplaint, as well as any documents incorporated by reference in the [c]omplaint or facts subject to judicial notice") (internal quotation omitted); *sec also* Restatement (Third) of Foreign Relations Law § 443 cmt. i (1987) (noting that "[c]ourts in the United States may take judicial notice of a document evidencing an act of state"). The Tnogambaev Declaration is replete with hearsay and subject to impeachment. More importantly, even taking his statements as true, whether Gulnora Karimova "masterminded" the acts of state at issue in this case is irrelevant because there is no "corruption" exception to the Act of State Doctrine.

[9] The declaration submitted by Plaintiffs expert Scott Horton, explaining that the "Uzbekistani judiciary lacks independence" (Exhibit C to the Opp'n, and reference at Opp'n. P. 18) and the State Department Country Reports (Exhibit K to the Opp'n and reference at Opp'n. P18), are irrelevant. Courts have consistently rejected reports, such as those relied on by Mr. Horton, as not constituting credible evidence of corruption or bias. See *El-Fadl v. Cent. Bank of Jordon,* 75 F.3d 668, 678 (D.C. Cir. 1996): *Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine,* 311 F.3d 488 (2d Cir. 2002) (rejecting State Department reports as "a basis for any conclusion that the courts of Ukraine constitute an inadequate forum").

In pursuing this theory, Plaintiffs attempt to ignore the clear application of *Galu v. SwissAir,* No. 86 Civ. 5551 (CSH), 1987 WL 15580 (S.D.N.Y. Aug. 3, 1987). *See Plaintiffs' Opposition* at 18. *Galu,* a case clearly on point with this matter that involved a defamation claim that would have required the court to adjudicate the truth of an official criminal investigation by a foreign government runs afoul of the Act of State Doctrine. 1987 WL 15580, at *3-4. Plaintiffs make a poor attempt to argue that *Galu* is inapposite because "there was no evidence that the defendant knew about the falsity of the Swiss expulsion order, let alone that they were involved in its fabrication." Plaintiffs further state that there is no evidence of corruption in the Swiss government, whereas "it is well established that the Uzbek government is riddled with corruption..." *See* Opp'n at P. 18.   First, as the court held in *Galu,* whether the SwissAir employees had inquired into the validity of the expulsion order (as they claimed to passengers they had) had no bearing on the application of the Act of State Doctrine, because the order was presumed valid. *Galu,* 1987 WL 15580, at *3.  Thus, Galu's claim would still have failed even if the SwissAir employees lied about confirming the validity of the order.   Second, as discussed above, Plaintiffs' Complaint does not contain a <u>single</u> allegation that Global influenced or was otherwise involved in the Uzbek acts of state at issue in this case.

Plaintiffs have made an after-the-fact attempt to manipulate the allegations in this matter into alignment with the facts surrounding the *Timberlane* matter, even though those allegations are much more akin to those in the *Galu* matter.  Unlike Plaintiffs' allegations in this matter, the acts of state at issue in *Timberlane* were private-initiated lawsuits to enforce security interests. 549 F. 2d at 604-605.  The only official governmental action involved were those acts taken to

aid the execution of those interests. Thus, the acts of state were ancillary to the actual conduct in dispute-defendants' own efforts to cripple plaintiff's operation. In this matter, Global merely published accurate cites from official government documents and, without Plaintiffs proving such documents were false, and reporting such by Global was with actual malice, Plaintiff simply does not have a colorable action against Global. Based upon this obvious lack of a colorable claim against Global, Plaintiffs should not be allowed to proceed with this matter.

## CONCLUSION

For the foregoing reasons, Defendant GlobalOptions, Inc. respectfully requests that the Court dismiss the Complaint in its entirety with prejudice, as well as any further relief that the Court deems just and proper.

Dated: February 22, 2008
      Washington, D.C.

                           Respectfully Submitted,

| | |
|---|---|
| /s/Morton S. Taubman | /s/ Mark David Hunter |
| Morton S. Taubman, Esq. | Mark David Hunter, Esq. |
| DC Bar No. 316604 | DC Bar No. 974569 |
| Leser Hunter Taubman & Taubman, PLLC | Leser Hunter Taubman & Taubman, PLLC |
| 1201 15th Street, N.W. | 407 Lincoln Road |
| Second Floor | Suite 500 |
| Washington, DC 20005 | Miami Beach, Florida 33139 |
| (202) 347-9090 (Telephone) | 305-604-5547 (Telephone) |
| (202) 659-2679 (Facsimile) | 305-604-5548 (Facsimile) |
| E-Mail: mtaubman@isiwdc.com | E-Mail: mdhunter@lhttlaw.com |

                       Attorneys for Defendant GlobalOptions, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, on February 22, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record listed below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive Notices of Electronic Filing electronically.

Service List

Carolyn Beth Lamm, Esq. (CM/ECF)

Stuart H. Newberger, Esq. (CM/ECF)

Morton S Taubman, Esq. (CM/ECF)

/s/ Mark David Hunter_____
Mark David Hunter, Esq.